(932 P.2d 461)

No. 74,766

SAUNDRA F. DEPEW, *Claimant/Appellant*, v. NCR ENGINEERING & MANUFACTURING, *Respondent/Appellee*, LIBERTY MUTUAL INSURANCE COMPANY, and AMERICAN GUARANTY & LIABILITY INSURANCE COMPANY, *Insurance Carriers/Appellees*, and KANSAS WORKERS COMPENSATION FUND, *Appellee*.

Opinion filed February 14, 1997.

*Norman I. Cooley*, of Wichita, for appellant.

*Douglas D. Johnson*, of Johnson & Kennedy, of Wichita, for appellees NCR Engineering & Manufacturing and Liberty Mutual Insurance Company.

*Vincent L. Bogart* and *Christopher A. McElgunn*, of Klenda, Mitchell, Austerman & Zuercher, L.L.C., of Wichita, for appellee Kansas Workers Compensation Fund.

Before ROYSE, P.J., GERNON, J., and ROBERT G. JONES, District Judge, assigned.

ROYSE, J.: This is a workers compensation case. Saundra F. Depew appeals the decision of the Workers Compensation Board (Board) that she suffered two separate scheduled injuries to her arms. Depew contends the Board misconstrued *Berry v. Boeing Military Airplanes*, 20 Kan. App. 2d 220, 885 P.2d 1261 (1994), when it refused to award her a general bodily disability for bilateral carpal tunnel syndrome.

Saundra Depew began working for NCR Engineering and Manufacturing (NCR Engineering) in 1978 as a secretary. In 1989, she began using computers in her work. Depew's work involved the creation of detailed computer designs, which required extensive use of a computer mouse. Depew had to grip the mouse in order to keep the cursor from slipping.

Depew began to experience pain in her right hand and arm in the fall of 1990. She was referred to Dr. Mark Melhorn, who diagnosed right carpal tunnel syndrome. Dr. Melhorn performed surgery on Depew's right wrist and elbow on April 1, 1991. Depew was released to return to work without restrictions on May 6, 1991. On May 9, 1991, Dr. Melhorn rated Depew's impairment at 7.7% to the right arm.

Depew continued to have problems with her right arm after she returned to work. She, therefore, began to use her left arm to do her work. Depew subsequently began having symptoms in her left arm. By September 13, 1991, her symptoms on the left had developed into carpal tunnel syndrome.

Depew saw Dr. George Lucas in December 1991. He removed her from work, and she has not worked since December 16, 1991. Dr. Lucas rated Depew's impairment to the left arm at 5% and imposed permanent work restrictions.

Depew filed a claim for workers compensation. The administrative law judge (ALJ) entered an award for a scheduled injury to Depew's right arm based on a 7.7% permanent partial impairment of function to the right arm. The ALJ awarded 55% permanent

partial general disability for a work disability from the second injury to Depew's left arm.

On review, the Board adopted the finding that Depew has a 7.7% disability to her right arm. The Board, however, determined that Depew's second injury was to the left arm only and concluded that the second injury should also be treated as a scheduled injury. The Board, therefore, entered an award for a scheduled injury to Depew's left arm, based on a 5% permanent partial impairment of function to the left arm.

K.S.A. 44-556 provides that workers compensation appeals are subject to the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* That Act limits the relief available on appeal. K.S.A. 77-621(c). The particular subsections applicable to this appeal are 77-621(c)(4) and (7):

"(c) The court shall grant relief only if it determines any one or more of the following:

. . . .

(4) the agency has erroneously interpreted or applied the law;

. . . .

(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act."

The 1993 amendments to the Workers Compensation Act limited review of all orders issued after October 1, 1993, to questions of law. K.S.A. 44-556(a). However, whether the Board's findings of fact are supported by substantial competent evidence is a question of law. *Tovar v. IBP, Inc.*, 15 Kan. App. 2d 782, 784, 817 P.2d 212, *rev. denied* 249 Kan. 778 (1991).

Depew first argues on appeal that under *Berry v. Boeing Military Airplanes*, she should have been compensated for a general bodily disability for her bilateral carpal tunnel. She maintains that the Board's decision to treat her bilateral carpal tunnel syndrome as two separate scheduled injuries reflects an erroneous interpretation of *Berry.*

Scheduled injuries are set forth in K.S.A. 44-510d. In particular, 44-510d(13) provides that compensation for loss of an arm shall

not exceed 210 weeks. Where specified combination injuries occur, 44-510c(a)(2) requires that they be treated as a permanent total disability rather than as scheduled injuries. K.S.A. 44-510c(a)(2) has been extended by case law to allow compensation for certain combination injuries based on permanent partial disability. See *Hardman v. City of Iola*, 219 Kan. 840, 844, 549 P.2d 1013 (1976). In *Murphy v. IBP, Inc.*, 240 Kan. 141, 144, 727 P.2d 468 (1986), the Supreme Court held that simultaneous aggravation to both arms and hands through repetitive use removes the disability from a scheduled injury and converts it to a general disability.

In this case, the Board determined that Depew had failed to prove her arms were simultaneously aggravated. Instead, the Board found that Depew sustained an injury to her right arm and then a separate injury to her left arm.

Depew's reliance on *Berry* is misplaced. *Berry* concerned a sheet metal worker who developed bilateral carpal tunnel syndrome. He was fired after refusing to accept an accommodation position which required a great deal of overtime. The ALJ determined that Berry's date of accident was the last day he had worked and awarded him compensation based on a 10% general disability. The Board arrived at the same conclusions. 20 Kan. App. 2d at 221-22.

On appeal, Berry argued that his date of accident was prior to July 1987. The *Berry* court affirmed the decision of the Board, adopting a bright line rule for determining the date of accident in a carpal tunnel case:

"The date of accident or date of occurrence in a workers compensation action involving carpal tunnel syndrome is the last day on which a claimant performs services for his or her employer and is required to stop working as a direct result of the claimant's pain and disability resulting from carpal tunnel syndrome." 20 Kan. App. 2d 220, Syl. ¶ 3.

*Berry* thus addressed a question totally separate from the one presented here. *Berry* established a method for determining the date of accident for a worker with carpal tunnel syndrome. *Berry* did not involve the question whether compensation for carpal tunnel syndrome should be based on a scheduled injury or on a general disability. In fact, in *Berry* the court simply inferred that the worker

.suffered a simultaneous aggravation based on the fact that the Board applied the permanent partial general disability statute. 20 Kan. App. 2d at 227. *Berry* only mentions 44-510d and *Murphy* in passing. *Berry* certainly does not purport to modify the simultaneous aggravation rule adopted in *Murphy*.

In short, *Berry* defines the date of injury for a worker who suffers carpal tunnel syndrome. Although there is some dicta in *Berry* which might suggest otherwise, 20 Kan. App. 2d at 227, we do not read *Berry* as an attempt to overturn *Murphy* by implication. See also *Bradford v. Boeing Military Airplanes*, 22 Kan. App. 2d, 868, 924 P.2d 1263 (1996) (claimant with bilateral carpal tunnel syndrome properly awarded compensation for scheduled injury to right arm; claimant failed to prove any compensable injury to left arm).

Depew in fact seems to acknowledge the continuing vitality of *Murphy* by arguing that she established a simultaneous aggravation. She contends the injuries to her right and left arm were simultaneous, because the symptoms in both arms occurred during her employment at NCR Engineering. Depew's interpretation of simultaneous aggravation, however, goes far beyond the holding in *Murphy*.

*Murphy* concerned a brisket trimmer in a meat packing plant. Her job required that she pull a 20 to 25 pound piece of meat off the line using a hook in her left hand and then trim the meat down to 15 to 20 pounds using a knife in her right hand. She then used her right hand to flip the meat over and push it back onto the line. She handled a new piece of meat every 18 seconds throughout the 8-hour work day. 240 Kan. at 141-42.

Murphy developed problems with her hands and took some time off. Her hands improved while she was off work. When she returned to work, she again began experiencing problems with her hands. Eventually, she had to have surgery on each hand. 240 Kan. at 142.

The court determined that Murphy's disability should be treated as a general bodily disability rather than two scheduled injuries: "where a claimant's hands and arms are simultaneously aggravated, resulting in work-related injuries to both hands and arms, the injury

is compensable as a percentage of disability to the body as a whole under K.S.A. 44-510e." 240 Kan. at 145.

Unlike *Murphy* and many of the bilateral carpal tunnel cases which arise in the meat packing industry, this case involves work that Depew performed with one hand. She used the right hand to grip her computer mouse, and she developed carpal tunnel symptoms in her right hand. After she had surgery on her right hand, she switched to her left hand to grip the mouse. After she began to use her left hand to grip the mouse, she developed carpal tunnel symptoms in her left hand. Significantly, two doctors testified that Depew did not have any aggravation of her right hand after she returned to work.

Based on *Murphy*, the Board properly concluded that Depew sustained two separate scheduled injuries. *Berry* does not require a different result.

Depew further contends the Board overlooked certain evidence to conclude she failed to prove simultaneous aggravation, but instead proved two separate injuries. As noted above, however, there was testimony in the record that Depew's aggravation of her right arm occurred before she returned to work, whereas the aggravation to her left arm occurred after she returned to work.

Findings in a workers compensation case which are supported by substantial competent evidence will be upheld. *Elder v. Arma Mobile Transit Co.*, 253 Kan. 824, 826, 861 P.2d 822 (1993). " 'Substantial evidence' " means evidence that possesses something of substance and relevant consequence or evidence that furnishes a substantial basis of fact from which the issues presented can reasonably be resolved. *Crabtree v. Beech Aircraft Corp.*, 229 Kan. 440, 442, 625 P.2d 453 (1981).

The Board's finding that Depew failed to prove simultaneous injuries, but instead established two separate injuries, is supported by substantial evidence.

Depew also argues she is entitled to a general bodily disability based on the principle of secondary disability. In particular, she points to the Board's ruling that the Workers Compensation Fund (Fund) shall be liable for her second injury, because the second injury would not have occurred but for the preexisting impairment

to her right arm. The Fund did not file a cross-appeal in this case, and, therefore, the issue of Fund liability is not before us.

The secondary disability principle was applied in *Reese v. Gas Engineering & Construction Co.*, 219 Kan. 536, 548 P.2d 746 (1976). The claimant in *Reese* sustained a compound fracture of both bones of the lower left leg, a scheduled injury. Medical testimony established that claimant's back was disabled as a direct and natural consequence of the injury to the leg. The district court awarded compensation for a general bodily disability, and the Supreme Court affirmed:

"[E]very natural consequence that flows from the injury, including a distinct disability in another part of the body, is compensable if it is a direct and natural result of the injury. [Citation omitted.]

"Compensation is allowable for a new and distinct disability suffered by a workman when it can be traced to a covered accident through the injury. The fact that the injury is scheduled does not bar compensation for general bodily disability when the new and distinct disability occurs in a nonscheduled part of the body and is a direct and natural result of the injury." 219 Kan. at 541.

The fallacy with Depew's reliance on the secondary disability principle is that it has no application when the increased disability results from a new and separate accident. "An injury is a natural and probable result of an accident where a claimant's disability gradually increased as a result of a primary accidental injury, but not when the increased disability resulted from a new and separate accident." *Wietharn v. Safeway Stores, Inc.*, 16 Kan. App. 2d 188, Syl. ¶ 6, 820 P.2d 719, *rev. denied* 250 Kan. 808 (1991); see *Stockman v. Goodyear Tire & Rubber Co.*, 211 Kan. 260, 263, 505 P.2d 697 (1973). The Board's finding that Depew's disability to her left arm arose from a separate injury forecloses application of the secondary disability principle. The imposition of liability on the Fund is consistent with that conclusion.

Depew's final argument is that the Board's award for two separate injuries violates her rights to equal protection under the United States Constitution. Depew relies on *Stephenson v. Sugar Creek Packing*, 250 Kan. 768, 830 P.2d 41 (1992). In *Stephenson*, the Supreme Court held unconstitutional a statutory provision requiring that repetitive use injuries occurring in opposite upper ex-

tremities be computed as separate scheduled injuries. The Supreme Court determined that the statute arbitrarily discriminated between workers who suffer loss of opposite upper extremities due to repetitive trauma and workers who suffer any other injuries to both upper extremities. 250 Kan. at 781-82.

There is no indication Depew raised this issue below. Where constitutional grounds for reversal are asserted for the first time on appeal, they are not properly before the appellate court for review. *Murphy*, 240 Kan. at 148.

In any event, Depew's reliance on *Stephenson* is misplaced. No arbitrary discrimination occurs when dissimilar cases are treated differently. Depew's assumption that persons must be treated the same under the workers compensation statute whether they suffer from one injury or two injuries is without merit.

The Board's award did not violate Depew's rights to equal protection.

Affirmed.